CHARLES P. CRAIG *vs.* LINDA M. DUNN and others.

July 28, 1891.

**Occupying-Claimants Law—Failure of Land-Owner to Pay for Improvements.**—Under the occupying-claimant law, upon the failure of the land-owner to pay within the time prescribed by the statute the amount awarded to the occupant for improvements, the title becomes vested in the occupant. Following *Flynn* v. *Lemieux,* 46 Minn. 458.

**Same—Occupant's Right after Verdict—Subsequent Legislation.** — Under the occupying-claimant law, (prior to the amendment of 1889,) after a verdict assessing the amount which the occupant was entitled to have paid for his improvements, the right of the occupant to have such payment made within the time then prescribed by the law (one year after verdict) became a vested right, and the amendment was ineffectual in such a case to extend the time for such payment to a year after the entry of judgment.

Appeal by plaintiff from an order of the district court for St. Louis county, *Stearns,* J., presiding, sustaining demurrers to the complaint.

*Edward Fuller* and *Cash & Williams,* for appellant.

*James E. Markham* and *Willis & Nelson,* for respondents.

DICKINSON, J.[1] The plaintiff, declaring himself to be the owner in fee of certain real estate, prosecutes this action to determine the adverse claims of the defendants. This is an appeal by the plaintiff from an order sustaining a demurrer to the complaint. The facts alleged as constituting the plaintiff's cause of action are as follows: In 1887, these defendants, asserting their title to this land, commenced an action of ejectment against certain persons who were in possession,—the plaintiff's grantors, as hereafter stated. The defendants in that action asserted title, and also that they had made valuable improvements in good faith while occupying under an official deed. In September, 1888, upon the trial of that action, verdict was rendered awarding to the plaintiffs (these defendants) the possession of the land, but assessing a certain sum in favor of the de-

[1] Collins, J., took no part in this decision.

fendants (this plaintiff's grantors) as the value of the improvements made and taxes paid by them. The plaintiffs did not, within one year from the rendering of that verdict, (in accordance with the statute then in force,) pay into court, or pay or tender, the amount so assessed for improvements and taxes; and the defendants in that action remained in possession until October, 1889, when they conveyed all their right, title, and interest to this plaintiff, who thereupon entered, and still remains, in possession.

The question principally discussed upon the hearing has been decided in *Flynn* v. *Lemieux*, 46 Minn. 458, where, considering the construction and effect of the occupying-claimants law as it existed prior to the amendment of 1889, it was held that, upon the failure of the claimant to pay the assessed value of the improvements within one year from the rendition of the verdict or the finding of the court, not only was his remedy to recover the land barred, but his right of property was extinguished, and the title became vested in the occupant, even though no judgment had been entered on the verdict or finding. The result of that decision, applied to this case, is that the complaint shows title in the plaintiff as the grantee of the former occupying claimants, unless the amendment of 1889 (chapter 190) leads to a different result. This amendatory act changed the former statute so as to require the payment of the assessed value of the improvements within one year from the *entry of judgment* on the verdict or finding of the court, instead of from the *rendition* of the verdict or finding; and by its terms it was made applicable to actions theretofore commenced. The question, then, is whether, after the rendition of the verdict under the former law, no judgment thereon having been entered, and during the running of the year within which, according to the law then in force, the assessed value of the improvements must be paid, as a condition precedent to the recovery of the land, it was within the power of the legislature to amend the law so as to extend the time for the performance of that condition. Put in another form, the question is whether, after the rendition of the verdict under the original statute, the right of the occupying claimant to have the value of the improvements, as assessed by the verdict, paid within one year, as a condition upon the performance of which alone

he should be required to surrender the land, was a *vested right*. If so, it was within the protection of the constitution as property, and could not be taken away or impaired by legislative enactment. But. if this right, being statutory, and not involving the elements of a contract, was only *inchoate*, not perfected as a complete legal right, doubtless it was still subject to the legislative will.

We are of the opinion that this right of the occupying claimants. after verdict, under the former law, became, by force of the verdict and of the statute declaring its effect, a vested right; and hence that. the amendment of 1889 could not be constitutionally operative in such a case. As was considered in *Flynn* v. *Lemieux*, it was within the power of the legislature to fix the time within which payment must be made with reference to the verdict, and to make the ultimate rights of the parties to depend upon compliance with the law limiting the time for payment to one year from the rendition of the verdict, even in the absence of a judgment. In other words, as respects. the matter in question, the verdict was made to have the effect of a legal determination of the right of the occupant to compensation for improvements, as well as the amount of the same; and the law then in force declared, in effect, that payment could only be made, and the land thereby recovered, within one year after that legal determination. Such an effect cannot be given to the verdict without at the same time giving to it the effect of legally *vesting* in the occupant the right expressed in the verdict and in the statute declaring its legal. force and consequences. When by force of the statute the verdict is. made to be a legal determination of the rights and obligations of the parties, rights become *thereby* vested,—legally established. Thereafter the occupant has not merely the opportunity or privilege under the statute of *acquiring* or *perfecting* a legal right to compensation for his improvements within a fixed time, as a condition without which he may retain the property, but he is clothed with the *right itself*, established under and in the manner prescribed by the law. It is no longer inchoate, or liable to be defeated by mere legislative enactment. The fact that the verdict is subject to the power of the court, for good cause, to set it aside, and grant a new trial, does not bar the way to this conclusion. The same might be said of a judgment;.

but, unless set aside, it is to be taken, as it is intended in the law to be, as the determination of the rights of the parties. And so the verdict, under the statute prior to the amendment, had the effect to legally determine the rights of the parties, and to fix the period within which the assessed value of improvements must be paid, if at all. It is true that verdicts are not ordinarily to be deemed to legally determine the rights of parties, the law in general contemplating that only the judgment shall have that effect. But that the effect of a legal determination may be given to the verdict in a judicial proceeding, where the law contemplates such a result, has been decided in *Felter* v. *Mulliner*, 2 John. 181; *Gaines* v. *Betts*, 2 Doug. (Mich.) 98; *Overall* v. *Pero*, 7 Mich. 315, and see 2 Black. Judgm. § 682. This statute looked to the verdict as a legal determination of the rights of the parties, although, doubtless, subject to the general authority of the court to vacate it for good cause. We think that at least the effect of the verdict, unless set aside, was to so far establish the rights of the parties in accordance with the existing law that the legislature had not the power to take away or impair the same by an amendment of the law.

Order reversed.